UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

BRANDON LAUREYS,

    *Plaintiff*,

v.

DISTRICT OF COLUMBIA, et al.,

    *Defendant.*

Civil Action No. 18-223 (RDM)

## MEMORANDUM OPINION AND ORDER

Plaintiff Brandon Laureys, who is represented by counsel, brings this action against the District of Columbia, five D.C. officers or employees, and two John Does. He has now filed his Third Amended Complaint, which alleges a variety of claims under federal and D.C. law relating to his treatment while incarcerated at the D.C. jail. Dkt. 19. The District of Columbia, the only defendant served to date, moves to dismiss Counts I, II, IV, and VI. Dkt. 20.

For the reasons explained below, the Court will grant in part and will deny in part the District's motion.

## I. BACKGROUND

Plaintiff filed this action in January 2018, Dkt. 1, but did not serve the District of Columbia until March 2018, Dkt. 4; Dkt. 5; Dkt. 6. He has yet to serve any of the remaining defendants. Because far more than 90 days have now expired, the Court has separately ordered that, unless Plaintiff effects service on the remaining defendants on or before October 24, 2019, the Court will dismiss the action without prejudice against those defendants. Dkt. 24.

After Plaintiff served the District of Columbia, the District moved to dismiss. Dkt. 7. Plaintiff then filed his first amended complaint as of right. Dkt. 8. The District again moved to

dismiss, Dkt. 10, and Plaintiff moved for leave to file a second amended complaint, Dkt. 12. The District opposed that motion, Dkt. 14, and, after the Court highlighted "substantial deficienc[ies]" in Plaintiff's proposed, second amended complaint at a status conference, July 10, 2018 Status Conference Tr. at 23:6, the Court afforded Plaintiff an opportunity to move for leave to file a third amended complaint addressing some of the factual gaps in the proposed second amended complaint, *id.* at 24:16–21. At that time, the Court cautioned counsel that he would need to plead more than just legal conclusions and would need to plead facts sufficient to satisfy the elements of each claim he seeks to bring. *Id.* at 3:7–15, 22–25; 6:1–12; 7:20–24. Ultimately, the District took no position regarding Plaintiff's request for leave to file a third amended complaint, Dkt. 18, and the Court granted Plaintiff's motion, Minute Order (Aug. 27, 2018).

The Third Amended Complaint (hereinafter "complaint") includes seven counts. Dkt. 19. According to the complaint, Plaintiff was "continuously incarcerated from on or about November 14, 2008 until his release on or about January 3, 2018," and he was held "for part of that time" at the D.C. jail. Dkt. 19 at 4 (3d Amd. Compl. ¶¶ 16–17). Plaintiff alleges that, while held at the D.C. jail, he was "improperly protected and classified by the defendants" and was improperly "placed with hardened criminals." *Id.* (3d Amd. Compl. ¶ 19). He alleges that employees at the D.C. jail were not properly trained or supervised, *id.* at 4, 6 (3d Amd. Compl. ¶¶ 20, 35), that these employees failed to properly supervise the inmates, *id.* at 5–6 (3d Amd. Compl. ¶¶ 23, 33–34), that they failed to keep them in their proper locations, *id.* at 5–6 (3d Amd. Compl. ¶¶ 25, 33 ), and that they failed to enforce the 8:00 p.m. curfew, *id.* at 5 (3d Amd. Compl. ¶ 25). He claims that these failures of the jail employees facilitated his injuries at the hands of other inmates. *Id.* at 6 (3d Amd. Compl. ¶ 35). He also alleges that he was

discriminated against because he is "Caucasian." *Id*. at 3, 7–8, 11 (3d Amd. Compl. ¶¶ 10, 43, 47–49, 67–68).

Plaintiff recounts three alleged instances when he was physically injured, twice by other inmates and once by a jail employee. First, Plaintiff alleges that in the evening of November 29, 2009, when inmates were supposed to be within their cells, an inmate punched him in the eye, causing a serious injury. *Id.* at 5 (3d Amd. Compl. ¶¶ 25–27). Second, he alleges that on February 5, 2010, Defendant "Sergeant Ekwanna sprayed [him] with mace for about eight . . . seconds for no valid reason," injuring him. *Id.* (3d Amd. Comp. ¶¶ 28, 30). Third, he alleges that, on or about March 28, 2010, he was "assaulted by three . . . inmates when he was in his protective cellblock," beaten with a broomstick, and cut on his face with razors. *Id.* at 6 (3d Amd. Compl. ¶¶ 32, 34). Following this last incident, Plaintiff alleges that the warden of the D.C. jail used "threat[s]" to try to convince him "to sign papers to prosecute the perpetrators of the March 28, 2010 incident and [to] waive liability against the defendants [named in the present action]" and that, in fact, he "was placed in solitary confinement . . . for more than five . . . months as punishment for failing to sign" the papers. *Id.* at 7 (3d Amd. Compl. ¶¶ 40–42). According to Plaintiff, this action was taken in "retaliation by persons in charge of policy, including the Warden, [the] directors of the Department of Corrections[,] Lieutenant Taylor[,] and all defendants." *Id*. (3d Amd. Compl. ¶ 41). He also alleges that he was "denied legal counsel and medical treatment" following this incident, *id.* (3d Amd. Compl. ¶ 44), and that "[o]n numerous occasions, including March 28, 2010, unsupervised inmates hit [him] with feces." *Id.* at 6 (3d Amd. Compl. ¶ 38).

The District of Columbia moves for partial dismissal of Counts I, II, IV, and VI of Plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Dkt 20.

## II. LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Well-pleaded complaints include "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Raising the "sheer possibility that a defendant has acted unlawfully" is not enough. *Id.* In evaluating a 12(b)(6) motion, the Court "accept[s] facts alleged in the complaint as true and draw[s] all reasonable inferences from those facts in the plaintiff['s] favor." *Humane Soc'y of the United States v. Vilsack*, 797 F.3d 4, 8 (D.C. Cir. 2015). This focus on the factual content of the complaint means that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

## III. ANALYSIS

Plaintiff's complaint is not a picture of clarity. With respect to each of the four counts that the District moves to dismiss, however, the Court will attempt to identify the nature of the claim asserted and the facts alleged in support of that claim. The Court will then determine whether those facts are sufficient to state the claim for relief. Because only the District of Columbia has been served, the Court will limit its analysis to the sufficiency of Plaintiff's claims against the District.

**A.    Count I: "Violation of Civil Rights pursuant to Title 42 Section 1983 of the United States Code"**

In Count I, Plaintiff seeks to recover from the District of Columbia under 42 U.S.C. § 1983 for a series of alleged violations of his First, Fourth, Fifth, Eighth, and Fourteenth Amendment rights. Dkt. 19 at 7 (3d Amd. Compl. ¶ 45). To state a claim for municipal liability

under § 1983, a plaintiff must clear two hurdles. First, he must allege "a predicate constitutional violation." *Baker v. District of Columbia*, 326 F.3d 1302, 1306 (D.C. Cir. 2003). Second, as required under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), and its progeny, he must allege facts sufficient to support a plausible inference "that a custom or policy of the municipality caused the violation." *Baker*, 326 F.3d at 1306. Each requirement "is separate and serves [a] different purpose[ ]," *id.*, and a plaintiff's failure to plead facts sufficient to satisfy either hurdle requires dismissal under Rule 12(b)(6).

With respect to the first hurdle, the District correctly observes that the District of Columbia is a federal entity subject to the Fifth Amendment, and not the Fourteenth Amendment, to the Constitution, *see Bolling v. Sharpe*, 347 U.S. 497, 499 (1954); *Propert v. District of Columbia*, 948 F.2d 1327, 1330 n.5 (D.C. Cir. 1991), and thus Plaintiff's Fourteenth Amendment claim must be dismissed. The District also argues that Plaintiff has failed to allege a predicate First Amendment violation, but it offers little or no analysis of Plaintiff's First Amendment claim. As the District recognized, Plaintiff alleges that he was "threatened and punished"—and, in particular, was placed in solitary confinement for five months—because he refused to identify his assailants and because he refused to waive his right to bring suit against the District. Dkt. 20 at 6; Dkt. at 7 (3d Am. Compl. ¶¶ 40–41). It is not obvious to the Court that this allegation fails to state a claim under the First Amendment, which, among other things, protects the right to petition the government by bringing suit. *See BE & K Constr. Co. v. NLRB*, 536 U.S. 516, 524–25 (2002) (right to file suit is one aspect of the right to petition protected by the First Amendment). If the First Amendment does not bar government actors from punishing prisoners for refusing to waive their constitutional right to file suit, the District has failed to explain why that is so.

5

The District devotes the bulk of its argument to the second hurdle—the requirement that section 1983 plaintiffs plausibly allege that "a policy or custom of the District of Columbia caused the constitutional violation alleged." *Baker*, 326 F.3d at 1306; *see also Triplett v. District of Columbia*, 108 F.3d 1450, 1453 (D.C. Cir. 1997) (explaining that § 1983 does not provide for municipal respondeat superior liability). "There are a number of ways in which a 'policy' can be set by a municipality to cause it to be liable under § 1983," including (1) "the explicit setting of a policy by the government that violates the Constitution;" (2) "the action of a policy maker within the government;" (3) "the adoption through a knowing failure to act by a policy maker of [unconstitutional] actions by his subordinates that are so consistent that they have become 'custom'"" and (4) "the failure of the government to respond to a need (for example, training of employees) in such a manner as to show 'deliberate indifference' to the risk that not addressing the need will result in constitutional violations." *Baker*, 326 F.3d at 1306 (citations omitted); *see also Ennis v. Lott*, 589 F. Supp. 2d 33, 38 (D.D.C. 2008) ("Plaintiff's [c]omplaint must 'include some factual basis for the allegation of a municipal policy or custom.'" (quoting *Hinson ex rel. N.H. v. Merritt Educ. Ctr.*, 521 F. Supp. 2d 22, 29 (D.D.C. 2007))).

Plaintiff's complaint is rife with legal conclusions and in many places amounts to no more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678. The Court disregards such statements in its consideration of the District's motion to dismiss and breaks down Plaintiff's various factual allegations to assess whether he has pleaded facts that could plausibly support municipal liability:

1. *Solitary Confinement*

According to the complaint, "[t]he Warden stated to [P]laintiff after March 28, 2010 that if he did not sign a paper releasing the District of Columbia from liability that he would remain in solitary confinement" and Plaintiff was subjected to five months in solitary confinement due to his refusal to surrender his claim. Dkt. 19 at 7 (3d Amd. Compl. ¶¶ 41–42). Liberally construed, the complaint also alleges that Directors Booth and Brown of the Department of Corrections acted alongside the Warden and that the Warden and Directors Booth and Brown are actors who "may by their actions subject the government to § 1983 liability" because they have "final policymaking authority." *City of St. Louis v. Prapotnik*, 485 U.S. 112, 123 (1988) (second quote quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986)); *see also Moonblatt v. District of Columbia*, 572 F. Supp. 2d 15, 20 (D.D.C. 2008) (noting that the Director of the District of Columbia Department of Corrections has final policymaking authority); Dkt. 19 at 3 (3d Amd. Compl. ¶ 5) ("Booth and . . . Brown . . . were directors of the Department of Corrections and were and are in charge of policy by the defendant District of Columbia."); *id.* at 7 (3d Amd. Compl. ¶ 41) (alleging that the Warden was "in charge of policy").

"Accept[ing] [these allegations] as true," *Iqbal*, 556 U.S. at 678, Plaintiff has alleged that the Warden and Directors Booth and Brown threatened him with and eventually subjected him to five months of solitary confinement because he refused to release a claim against Defendants, Dkt. 19 at 7 (3d Amd. Compl. ¶ 41). These allegations, although lacking substantial detail, are sufficient to state a First Amendment claim against the District of Columbia under the *Monell* framework. *See* 436 U.S. at 694. The Court will, accordingly, deny the District's motion to dismiss Plaintiff's First Amendment claim.

### 2. *Jail Employees' Failure to Protect and Supervise*

The complaint fails, however, to allege facts permitting a plausible inference that the District had a policy or custom of providing inadequate supervision and protection of inmates. Even assuming that Plaintiff has pleaded facts that could plausibly support the inference that jail employees had a "consistent" or "widespread" practice of failing adequately to supervise and protect inmates, *Richardson v. District of Columbia*, 322 F. Supp. 3d 175, 182 (D.D.C. 2018); *Dickerson v. District of Columbia*, 806 F. Supp. 2d 116, 120 (D.D.C. 2011)—and the Court doubts that he has done so—he has not alleged any facts that might support an inference that the District "adopt[ed] [any such custom] through a knowin*g* failure to act" or otherwise had a policy or custom that caused his alleged injuries. *Baker*, 326 F.3d at 1306. He has not alleged that he put "prison officials . . . on notice" of jail employees' allegedly dangerous behavior by, for example, "complain[ing] of the excessive risk to his safety" that it posed. *Thomas v. District of Columbia*, 887 F. Supp. 1, 5 (D.D.C. 1995); *see also Daskalea v. District of Columbia*, 227 F.3d 433, 441–42 (D.C. Cir. 2000) (concluding that "the District and its policymakers were on notice that D.C. guards lacked basic respect for the rights of female inmates, and that . . . substantial intervention" was needed because of a recent court decision finding the District liable for such abuses as well as the plaintiff's "repeated[ ] complain[ts] of sexual abuse," including "grievance forms and letters [sent] to everyone from correctional officers to the Deputy Warden, Warden, and Director of the Department"). Nor has he alleged "that had the District of Columbia . . . done its job competently [it] would had to have known that" jail employees were insufficiently supervising and protecting inmates, but the District "nonetheless 'deliberately' allowed this to continue." *Baker*, 326 F.3d at 1307. "This is not, moreover, the unusual situation in which misconduct is 'sufficiently . . . obvious' that the misconduct, 'on its

8

face, raises doubts about a municipality's training policies.'" *Grissom v. District of Columbia*, 853 F. Supp. 2d 118, 124 (D.D.C. 2012) (quoting *Atchinson v. District of Columbia*, 73 F.3d 418, 422–23 (D.C. Cir. 1996)) (finding such an unusual situation where a police officer shot a man on a city street almost immediately after yelling "freeze").

The Court will, accordingly, dismiss Plaintiff's Fifth and Eighth Amendment failure-to-protect and failure-to-supervise claims.

    3.    *Other Claims: Racial Discrimination, Failure to Provide Legal and Medical Assistance, Use of Mace*

Finally, the complaint fails to allege facts sufficient to support a municipal-liability claim against the District for racial discrimination, failure to provide access to legal counsel, failure to provide medical assistance, or for Sergeant Ekwanna's alleged use of mace. First, Plaintiff does not allege that the District had an official policy that mandated any of the challenged actions. Second, he does not plausibly allege that an official with policymaking authority (1) determined what punishment, if any, to impose on the African American inmates that Plaintiff alleges were subject to "less severe punishment" than he was, *see* Dkt. 19 at 7 (3d Amd. Compl. ¶ 43) ("The other inmates involved were African Americans and received less severe punishment."); (2) denied him legal or medical assistance, *see id.* (3d Amd. Compl. ¶ 44) ("[P]laintiff was denied legal counsel and medical treatment."); or (3) sprayed him with mace or requested or allowed anyone else to spray him with mace, *see id*. at 5 (3d Amd. Compl. ¶ 30) ("Sergeant Ekwanna sprayed Mr. Laureys with mace . . . ."). Third, Plaintiff does not allege that any of these actions occurred repeatedly or consistently; to the contrary, he alleges that each occurred only once. Finally, Plaintiff does not allege facts that would support a plausible inference that the District knowingly adopted through inaction or was deliberately indifferent to any of these actions.

The Court will, accordingly, dismiss Plaintiff's Fifth and Eighth Amendment claims for racial discrimination, failure to provide access to legal counsel, failure to provide medical assistance, and for the use of excessive force (i.e., the excessive use of mace).

**B.      Count II: "Violation of Title 42 Section 1981 of the United States Code Violation of Equal Rights Under the Law"**

Count II alleges that

> [t]he defendant, through its agents and employees, failed to give the plaintiff equal rights under the law based upon his race. He was denied civil rights and due process. The other inmates involved in the March 28, 2010 incident were African-Americans, three (3) were the perpetrators and received less severe punishment.

Dkt. 19 at 8 (3d Amd. Compl. ¶ 48). Plaintiff premises this claim on 42 U.S.C. § 1981. *Id.* The claim fails for multiple reasons.

To begin, as the District points out, the D.C. Circuit has held that § 1983 remains the only remedy available to Plaintiffs who allege that state actors have violated 42 U.S.C. § 1981. *See Brown v. Sessoms*, 774 F.3d 1016, 1020–21 (D.C. Cir. 2014). Therefore, the violation that Plaintiff alleges in Count II is only actionable through the statutory route addressed in Count I, and the same municipal liability limitations apply. *Olatunji v. District of Columbia*, 958 F. Supp. 2d 27, 33 (D.D.C. 2013).

Moreover, as discussed above, Plaintiff has not alleged facts sufficient to state a municipal liability claim for racial discrimination under the *Monell* framework, and, even beyond that difficulty, Plaintiff has failed to allege any facts that would support a plausible claim of racial discrimination. The "court must first 'tak[e] note of the elements a plaintiff must plead to state [the] claim to relief, and then determine whether the plaintiff has pleaded those elements with adequate factual support to 'state a claim to relief that is plausible on its face.'" *Blue v. District of Columbia*, 811 F.3d 14, 20 (D.C. Cir. 2015) (quoting *Iqbal*, 556 U.S. at 675, 678)

(internal citations omitted) (alterations in original).  One element of a racial discrimination claim under § 1981 (or under the Equal Protection Clause component of the Fifth Amendment) is that "the defendant intended to discriminate against the plaintiff on the basis of race." *Wilson v. DNC Servs. Corp.*, 315 F. Supp. 3d 392, 399–400 (D.D.C. 2018) (quoting *Mazloum v. District of Columbia Metro. Police Dep't*, 522 F. Supp. 2d 24, 37 (D.D.C. 2007)).  To withstand a rule 12(b)(6) motion on such a claim, a plaintiff "must allege some facts to show that race was the reason for the defendant's action," such as facts indicating "that he was treated less favorably than another similarly situated person of a different race." *Id.* at 400.  Plaintiff alleges no such facts here.  His only relevant factual allegation—that the three African American inmates who assaulted him were not subjected to solitary confinement following the incident—does not support his claim.  Based on Plaintiff's own allegations, the alleged assailants were not similarly situated comparators; rather, Plaintiff was allegedly placed in solitary confinement because he refused to waive his potential claim against Defendants and because he refused to identify his assailants.  The complaint does not even suggest that Plaintiff's attackers were similarly situated.

Because Plaintiff has failed to plead any other facts that would support a plausible claim under § 1981 or that would support a plausible inference of intentional racial discrimination, the Court will dismiss Count II.[1]

## C. Count IV: "Negligent Failure to Supervise, Hire, Train and Properly Retain Correctional Officers"

Count IV alleges that "the defendants failed properly to supervise, train, hire, fire and monitor the actions of correctional officers" and "improperly retained certain correctional

---

[1] Because Plaintiff failed to state a plausible claim of racial discrimination and because the parties did not brief the issue, the Court does not address whether Count II states a claim for a violation of his right to "make and enforce contracts," as is required under 42 U.S.C. § 1981. *See Olatunji*, 958 F. Supp. 2d at 31.

11

officers." Dkt. 19 at 10 (3d Amd. Compl. ¶ 58). The District moves to dismiss this count, arguing that Plaintiff has not alleged facts suggesting that the District was on notice of any inadequate performance by the officers.

In order to state a claim for negligent supervision or training under D.C. law, a plaintiff must allege facts supporting a plausible inference that the employer "knew or should have known its employee behaved in a dangerous or otherwise incompetent manner, and that the employer, armed with that actual or constructive knowledge, failed to adequately supervise the employee" or train him. *District of Columbia v. Tulin*, 994 A.2d 788, 794 (D.C. 2010) (quoting *Giles v. Shell Oil Corp.*, 487 A.2d 610, 613 (D.C. 1985)); *Blakeney v. O'Donnell*, 117 F. Supp. 3d 6, 20–21 (D.D.C. 2015) (subjecting failure to train and failure to supervise claims to similar analysis); *Spiller v. District of Columbia*, 302 F. Supp. 3d 240, 254–55 (D.D.C. 2018) (same). Here, the complaint alleges that correctional officers at the D.C. jail let inmates out of their cells at improper times and allowed them to enter the incorrect cell blocks; "improperly protected" Plaintiff; and "improperly supervised" other inmates, allowing him to be injured by other inmates on two different occasions. Dkt. 19 at 4, 6 (3d Amd. Compl. ¶¶ 19, 33). But, as discussed above, Plaintiff has not alleged facts indicating that the District had actual or constructive knowledge of any such behavior and, accordingly, "notice that the officers required additional supervision or training." *Spiller*, 302 F. Supp. 3d at 255; *see also Blakeney*, 117 F. Supp. 3d at 21 (dismissing negligent failure to train and supervise claims where plaintiff "has not alleged any facts to support the inference that the District had knowledge of MPD officers' tendency to use excessive force"). Absent any such factual allegations, he cannot state a claim for negligent supervision or training.

The Court will, therefore, dismiss Count IV.[2]

**D.    Count VI: "Violation of the District of Columbia Human Rights Act"**

Finally, Count VI alleges that "the defendants, through their agents and employees, violated the [DCHRA] by [their] actions or inaction." Dkt. 19 at 11 (3d Amd. Compl. ¶ 67). The District responds that Plaintiff has not identified which provision of the DCHRA he believes it violated, and further argues that the DCHRA does not extend to inmates in a jail setting. *See* Dkt. 20 at 15 (citing D.C. Code § 2-1401 *et seq.*). Plaintiff counters that he "need not specify what part of the [DCHRA] is applicable" and that the law extends to those who, like, Plaintiff live "in the jail and [participate in] educational classes" there. Dkt. 21 at 3 (Pl. Opp. ¶ 15). In addition, he argues that his allegations that "he was improperly classified with hardened criminals and discriminated against by being placed in solitary confinement" are sufficient to survive Defendant's motion to dismiss. *Id*.

The DCHRA was enacted "to secure an end in the District of Columbia to discrimination for any reason other than that of individual merit, including . . . discrimination by reason of race." D.C. Code § 2-1401.01. It prohibits discriminatory practices in a variety of settings and contexts, including employment, housing and commercial space, public accommodations, and educational institutions. D.C. Code § 2-1401 *et seq.*; *see, e.g.*, *Lemmons v. Georgetown Univ. Hosp.*, 431 F. Supp. 2d 76, 86 (D.D.C. 2006) (discussing intentional race discrimination claims

---

[2]  The District also argues that Count IV must be dismissed because its "decisions concerning training, supervision, hiring and employee retention policies are policy judgments for which it is entitled to discretionary immunity." Dkt. 20 at 15. Because Plaintiff has failed to plead sufficient facts to plausibly allege a claim for negligent failure to train or supervise, the Court need not reach this argument.

13

under the DCHRA); *Mitchell v. DCX, Inc.*, 274 F. Supp. 2d 33, 47–48 (D.D.C. 2003) (discussing unintentional disparate-impact discrimination claims under the DCHRA).

The Court need not decide whether the DCHRA applies to inmates held in the D.C. jail because, even if it does, Plaintiff's complaint does not "contain sufficient factual matter, accepted as true, to 'state a [discrimination] claim . . . that is plausible on its face.'"[3] *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). Plaintiff's bare allegation that, on a single occasion, he was subjected to solitary confinement while three differently-situated African American inmates were not does not plausibly support the inference that the District discriminated against him based on his race. *Id.* (raising the "sheer possibility that a defendant has acted unlawfully" is not enough to defeat a motion to dismiss).

The Court will, accordingly, dismiss Count VI for failure to state a claim.

---

[3] In *Moonblatt v. District of Columbia*, the district court considered a prisoner's claims of race-, religion-, and sexual orientation-based discrimination under the DCHRA and noted:

> It is conceivable—although unlikely—that Moonblatt's allegations could fall under D.C. Code § 2-1402.31, which prohibits discrimination in all places of public accommodation. Similarly, the housing portion of the DCHRA found in D.C. Code § 2-1402.01 may embrace Moonblatt's allegations here, although the Court is skeptical regarding the viability of that option as well.

572 F. Supp. 2d at 28. The court's analysis proceeded by "assum[ing] at this juncture that a cause of action exists." *Id.*

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss, Dkt. 20, is hereby **GRANTED** in part and **DENIED** in part. As to Count I, Plaintiff may proceed only on his claim that the District violated his First Amendment rights. His other constitutional claims against the District under § 1983 are dismissed. Counts II, IV, and VI against the District are dismissed.

**SO ORDERED**.

                                            /s/ Randolph D. Moss
                                            RANDOLPH D. MOSS
                                            United States District Judge

Date: September 25, 2017